(35 South. 798.)

No. 14,660.

KIERNAN v. JACKSON.

(Jan. 18, 1904.)

**NOTE—JUDGMENT BY CONFESSION—WAIVER OF CITATION—APPEAL BY STATE.**

1. Where, in a promissory note payable in the future, the maker, simultaneously with the execution of the same, waives citation and confesses judgment upon it, the waiver and the confession are without effect, but the note itself is not annulled. A waiver of citation and confession of judgment made after the maturity of the note will warrant a judgment upon the note, though the circumstances under which this was done may give rise to an action of nullity for fraud. Where the state appeals from such a judgment, making allegations of matters of fraud which require evidence to be taken, the proper remedy is by an action in nullity and an injunction, not by a suspensive appeal.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Joseph D. Kiernan against W. L. Jackson, doing business under the names of W. L. Jackson and W. L. Jackson & Co., Bankers. Judgment for plaintiff, and the state, through the Attorney General, files a petition for a suspensive appeal. Appeal dismissed.

Walter Guion, Atty. Gen. (Lewis Guion, of counsel), for the State. James Barkley Rosser, Jr., for appellee.

### Statement of the Case.

NICHOLLS, C. J. On the 23d of October, 1902, the plaintiff filed a suit in the civil district court, in which he averred that W. L. Jackson, domiciled and doing business in the city of New Orleans under the name and title of W. L. Jackson and W. L. Jackson & Co., Bankers, was indebted to him in the sum of $3,000, as the holder and owner, for value, of six promissory notes, dated New Orleans, April 18, 1902, each for the sum of $500, with 8 per cent. interest from their respective maturities—the first of these payable on May 18, 1902, and the last on October 18, 1902; that they were all due and unpaid, notwithstanding amicable demand.

He prayed that W. L. Jackson be cited, and that he have judgment against him for $3,000, with interest at 8 per cent. from the maturities of the different notes. Accompanying this petition, and filed simultaneously with it, was an instrument dated New Orleans, October 20, 1902, subscribed, "W. L. Jackson," declaring that the subscriber waived service of a copy of this petition, and confessed judgment in favor of the petitioner in the sum of $3,000, with interest, as prayed for; waiving all legal delays, and agreeing that judgment should be entered at once and signed, and at once become executory, without further delay."

The case was taken up and judgment signed on the same day in favor of the plaintiff and against W. L. Jackson for the sum of $3,000, with interest as prayed for. On the 24th of October, 1902, the state of Louisiana, through the Attorney General, filed a petition in which an application was made on its behalf for a suspensive appeal from said judgment to the Supreme Court.

The appeal was granted, returnable on the 17th of November, 1902, and the transcript of appeal was duly filed.

In support of the right to the appeal, it was averred that on the 15th of September, 1902, the state, through the Attorney General, filed in the civil district court, Division E, in the suit entitled "State of Louisiana v. L. A. Gourdain et al.," No. 40,760 of the docket of said court, a supplemental and amended petition wherein it was alleged that L. A. Gourdain, together with others whose names were then unknown to mover and petitioner, had established and been carrying on an illegal lottery business in the city of New Orleans in the names of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, and that said W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, were and are fictitious firms, having no real and actual existence, and that L. A. Gourdain and others associated with him were and are guilty of false personations in using the names of said W. L. Jackson & Co. and said W. L. Jackson & Co., Bankers, in conducting and carrying on an illegal lottery business which had already been enjoined and prohibited, and that the names of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, were being used by said L. A. Gourdain, and by other persons, unknown to mover and petitioner, associated with him in said illegal business, for the purpose of evading the injunction which had already been issued prohibiting said L. A. Gourdain and other persons named in the original and supplemental petitions filed in said suit No. 40,760 from conducting and carrying it on.

That in said supplemental petition filed as aforesaid on the 15th September, 1902, it was alleged that L. A. Gourdain and certain other persons, whose names were unknown to mover, were at that time carrying on and conducting an illegal lottery business under the names of W. L. Jackson & Co. and W.

L. Jackson & Co., Bankers, through and by means of the Southern Express Company, represented by C. A. Pardue, agent, the Pacific Express Company, also represented by C. A. Pardue, agent, the American Express Company, represented by J. F. Nosler, agent, and the Wells-Fargo Express Company, represented by J. C. Stuart, agent, and that said express companies were aiding and assisting the illegal carrying on said unlawful lottery business by carrying express packages and other express matter for the pretended or fictitious firms of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, which names were used for the purpose of perpetrating a fraudulent swindle carried on, in violation of the criminal laws and the public policy of mover and petitioner, by said L. A. Gourdain and other persons associated with him, and colluding with him to defraud the public through and by means of an illegal and swindling lottery scheme thus being carried on by them.

That said express companies had been and were then being used by said L. A. Gourdain and others, whose names were unknown to mover and petitioner, acting under and in the names of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, in aiding and assisting them to carry on their illegal and swindling lottery scheme and business by means of packages containing lottery tickets, circulars, and advertisements sent out in the names of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, by said L. A. Gourdain and others, to various persons, firms, and corporations throughout the United States, by means of said express companies and the transportation facilities afforded by them, as well as by the delivery by said express companies to L. A. Gourdain and others, either directly or indirectly, of packages containing money, checks, drafts, and orders for money, addressed to said W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, sent through said express companies in the purchase of illegal lottery tickets, and otherwise carrying on an illegal lottery business and scheme.

That petitioner prayed in said amended and supplemental petition for an order of injunction enjoining said express companies from receiving from any person, firm, or corporation any packages or other matter sought to

be sent, transmitted, or shipped through said companies in the name of W. L. Jackson & Co., or W. L. Jackson & Co., Bankers, or by any other person acting for, or pretending to act for or represent, said fictitious firms, as well as from delivering to any person, firm, or corporation, or to any one claiming to represent them, any packages or other matter addressed to W. L. Jackson & Co., or W. L. Jackson & Co., Bankers, or to any other person, firm, or corporation connected with, or suspected of being connected with or engaged in, said illegal lottery business.

That mover and petitioner also prayed for an order of sequestration, directed to the civil sheriff of the parish of Orleans, ordering him to sequester and take into his possession any and all packages or other matter in the possession or custody or under the control of said express companies, deposited with them in the name of W. L. Jackson & Co., or W. L. Jackson & Co., Bankers, or by any one of them, or addressed to said pretended firm of W. L. Jackson & Co., or W. L. Jackson & Co., Bankers, or to any firm, person, or corporation connected with, or suspected of being connected with or engaged in, said illegal lottery scheme, as also all such packages or matter that might be received by said express companies from time to time up to the final determination of said suit, and finally that judgment be rendered sustaining said sequestration and perpetuating said injunction.

That the Honorable Fred D. King, judge of Division B, acting in the place and stead of Judge George H. Théard, judge of Division E, granted the orders of injunction and sequestration as prayed for on the 15th September, 1902, and that writs of injunction and sequestration as prayed for were accordingly issued.

That, acting under said writs of sequestration, directed to him, the civil sheriff of the parish of Orleans sequestered and took into his possession a large number of packages addressed to W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, sent to various persons throughout the United States through and by means of said express companies, each supposed to contain the sum of $37.50 in money, transmitted to said addresses of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, for lottery tickets sent by said fictitious firms of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, to the various senders of said express packages, and that said sheriff holds the same in his possession and custody until further ordered by court how to proceed in the premises.

. That mover and petitioner caused the sequestration of said packages for the purpose of preventing the same from being delivered to the fictitious firms of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, or to any one else connected with said illegal lottery swindle, and in order that the rightful owners of the same might present themselves and be placed in possession of the same, as well as for the purpose of securing such evidence as might be contained in said packages tending to establish the identity of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, in order to bring the guilty parties to justice for violating the criminal laws of this state, in the carrying on of a swindling lottery scheme or venture, and that mover and petitioner had the right to cause said process to issue.

That, notwithstanding such facts, and the further fact that W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, are fictitious firms, and W. L. Jackson a fictitious person, having no real existence, nevertheless the plaintiff herein, Joseph D. Kiernan, has caused a writ of fieri facias to issue upon the judgment rendered as aforesaid in his favor by this honorable court, and has caused to be seized by the civil sheriff of the parish of Orleans, under said writ, all of the packages sequestered as aforesaid by mover and petitioner, thereby seeking to obtain possession of said packages, and the contents of the same, in violation of law and the rights of mover and petitioner, as well as the rights of those to whom said packages belong, and against mover's and petitioner's public policy.

For the reasons aforesaid, and for the further and additional reasons set forth fully in a petition which mover and petitioner will file immediately in this court to annul and set aside said judgment, that said judgment is an absolute nullity; that the same was ob-

tained upon notes which had no real existence, having been signed by a fictitious person, or, if signed by a person actually in existence, which is denied, that the same were signed, executed, and issued in violation of article 91 of the Constitution of this state, and therefore, being null and void, could not form the basis for a judgment to be rendered thereon; that, if there be any such person as W. L. Jackson, which is denied, he could not carry on business in the name of W. L. Jackson ·& Co., or W. L. Jackson & Co., Bankers, the same being in violation of a prohibitory law; and that said judgment rendered on the 23d October, 1902, was obtained through fraud and other ill practices on the part of plaintiff in said cause No. 68,848, and said judgment should be annulled and set aside.

The prayer of the petitioner was that for the reasons aforesaid a suspensive appeal be granted to mover from said judgment, as prescribed by law, returnable to the Supreme Court of this state, in order that said Supreme Court of the state might review the proceedings had in said suit No. 68,848, and decree and adjudge that the judgment rendered in said suit was null and void and of no effect, and that mover and petitioner be dispensed from giving bond for said appeal, no bond being required under the law. And petitioner and mover prayed for citation and service of this motion and petition as required by law.

Petitions and citations issued from the civil district court. The citations were addressed to the plaintiff and to W. L. Jackson, doing business in the city of New Orleans under the names of W. L. Jackson and W. L. Jackson & Co., Bankers. The returns upon the citations to the plaintiff show personal service upon him; that upon W. L. Jackson, doing business in the city of New Orleans under the name of W. L. Jackson & Co. and W. L. Jackson & Co., Bankers, declares that, after due, diligent search, "the sheriff was unable to find W. L. Jackson, doing business in the city of New Orleans under the name of W. L. Jackson and W. L. Jackson & Co., Bankers, the defendants, his domicile, his whereabouts, or any one legally authorized to represent them." No appearance was made in the Supreme Court either for the plaintiff, Kiernan, or for the defendant, W. L. Jackson, or W. L. Jackson & Co., Bankers.

## Opinion.

The only evidence adduced in the district court was the testimony of the plaintiff himself. He testified that he knew W. L. Jackson, the defendant in this case, personally. He had been his (witness') client. He had seen him on last Monday sign his name to the petition in this case, confessing judgment in witness' favor. He knew his signature, and had often seen him write, "That is his signature." Neither the notes annexed to the petition, nor the confession of judgment, were themselves offered in evidence.

The state urges that the judgment is absolutely null, for the reason that the waivers of citation and the confession of judgment were violative of article 91 of the Constitution of 1898, as they antedated the maturity of the obligations declared upon. Had the plaintiff relied upon the waiver of citation and the confession of judgment made upon the notes, they would have fallen under the operation of that article of the Constitution; but the waiver of confession depended upon by the plaintiff was that written at the foot of the petition, and bears date of the 20th of October, which is subsequent to the maturities of all the notes, except the last one, and even after that one, if the two last days of grace be left out of view. While this particular objection raised might, under some circumstances, be urged in an action of nullity, when linked with other circumstances, as indicative of bad faith or fraud, we do not think it has the weight per se which appellant ascribes to it as raised upon this appeal. The allegations of the Attorney General, a sworn officer of the state, are of a very grave character, and are specific, and, if sustained by proof, would show that the machinery of the courts has been utilized in violation of law and in aid of wrong. The issues raised on these allegations are matters in pais, which should be disposed of, not on an appeal, but in an action of nullity. For the reasons assigned, it is ordered that the appeal taken herein be dismissed, under reservation of the state's right to attack the judgment herein appealed from through an action of nullity.